IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ALBERT E. CAL, JR.,                     )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        Civil Action No. 1:25-cv-00819 (RDA/LRV)
                                        )
MOLINA HEALTHCARE INC., *et al.*,       )
                                        )
        Defendants.                     )
_____     )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Molina Healthcare, Inc. and Molina

Healthcare of Virginia, LLC's ("Defendants" or "Molina") Motion to Dismiss the Amended

Complaint (the "Motion"). Dkt. 19. This Court has dispensed with oral argument as it would not

aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been

fully briefed and is ripe for disposition. Considering the Motion together with the accompanying

Memorandum in Support (Dkt. 20), *pro se* Plaintiff Albert Cal Jr.'s Opposition (Dkt. 25),

Defendants' Reply (Dkt. 26), and Plaintiff's subsequent filings (Dkts. 27, 29),[1] this Court

GRANTS the Motion for the reasons that follow.

---

[1] The Court notes that these subsequent documents were filed in violation of the Local
Rules, as well as this Court's *Roseboro* notice. *See* E.D. Va. Loc. Civ. R. 7(F)(1) (ordering that,
after the memorandum in support, opposition, and reply are filed, "[n]o further briefs or written
communications may be filed without first obtaining leave of Court"); Dkt. 21 (same).
Nonetheless, in deference to Plaintiff's *pro se* status, the Court has considered these filings in
reaching its decision here.

1

# I. BACKGROUND

## A. Factual Background[2]

Plaintiff is an African American male, over the age of 40, who was employed by Molina as a Provider Contract Manager from April 2023 until his termination in March 2024. Dkt. 16 ¶ 6. By December 29, 2023, Plaintiff's supervisors began requesting reports of Plaintiff's daily schedule and to be copied on any emails he sent. Dkt. 16 ¶ 8; Dkt. 16-2. Plaintiff alleges that management failed to provide him with access to software programs, mailboxes, and other data that was essential to performing his role. Dkt. 16 ¶¶ 9, 13, 15, 16. Plaintiff further alleges that management failed to properly train him despite repeated requests for assistance and direction. *Id.* ¶¶ 11, 14. Plaintiff states that his requested training meetings were repeatedly canceled, rescheduled, or neglected by his assigned training manager. *Id.* ¶ 12. Plaintiff alleges that these shortcomings resulted in project delays that were unfairly blamed on him as opposed to upstream staff. *Id.* ¶¶ 10, 13, 15.

Plaintiff generally alleges that criticism of his performance was based either on standards that were not equally applied to female employees (Plaintiff claims to be the only male employee) or managerial errors beyond his control. *Id.* ¶¶ 13–24. Plaintiff further claims that he is disabled (though he does not identify his alleged disability in his Amended Complaint), that he notified Defendants of his disability in January of 2024, and that Defendants did not engage with his requests for reasonable accommodations. *Id.* ¶ 28.

---

[2] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the Motion to Dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff filed a formal charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants on February 5, 2025, alleging retaliation and discrimination based on age, disability, race, and sex (the "EEOC Charge").[3] Dkt. 20-1 at 11. Subsequently, Plaintiff received a letter stating that his EEOC Charge had been cross-filed with the California Civil Rights Department. Dkt. 16-1. This letter included a notice of Plaintiff's right to sue in a California State Superior Court. *Id.* On February 11, 2025, the EEOC issued a Dismissal and Notice of Rights, stating that "EEOC is closing this charge because your charge was not filed within the time limits under the law," and notifying Plaintiff of his right to sue Defendants within 90 days. *Id.*

### B. Procedural History

Plaintiff initiated this action on May 12, 2025. Dkt. 1. On August 6, 2025, Defendants filed a motion to dismiss. Dkt. 7. Shortly after briefing on the first motion to dismiss concluded, Plaintiff filed his Amended Complaint. Dkt. 16. In deference to Plaintiff's *pro se* status, this Court granted Plaintiff leave to amend his Complaint *nunc pro tunc* and denied the first motion to dismiss as moot. Dkt. 17.

Defendants then filed the instant Motion to Dismiss on September 29, 2025. Dkts. 19, 20. On the same day, this Court notified Plaintiff of Defendant's Motion to Dismiss and Plaintiff's right to reply within twenty-one days pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Dkt. 10. Plaintiff filed his Opposition on October 20, 2025. Dkt. 25. Defendants filed a

---

[3] Plaintiff's EEOC Charge is attached to the Motion, and it is "integral to the complaint and authentic." *See Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Therefore, this Court can consider the EEOC Charge when evaluating the Motion. *See id.*

3

Reply on October 24, 2025. Dkt. 26. Plaintiff subsequently filed two additional documents. Dkts. 27, 29.

## II. STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, *see Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015), but they "may consider documents . . . attached to the motion to dismiss, as long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

4

## III. ANALYSIS

Plaintiff asserts claims for discrimination, hostile work environment, retaliation, failure-to-accommodate, and disparate treatment under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Civil Rights Act of 1981, ("Section 1981" or "1981"), the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA"). Dkt. 16 ¶ 1; 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1981; 42 U.S.C. §§ 12101 *et seq.*; 29 U.S.C. § 621 *et seq.* Defendants argue that Plaintiff's Title VII, ADA, and ADEA claims are time-barred for failure to exhaust and that Plaintiff otherwise fails to state a claim. Dkt. 20. The Court addresses each argument in turn.

### A. Failure to Exhaust

Prior to filing suit, Title VII, the ADA, and the ADEA all require a plaintiff to timely exhaust his administrative remedies by filing a discrimination charge with the EEOC within 300 days of the alleged discrimination. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d); 42 U.S.C. § 12117. Section 1981, however, does not have the same requirements. Thus, Defendants appropriately moved to dismiss only Plaintiff's Title VII, ADA, and ADEA claims for failure to exhaust administrative remedies.

Here, Plaintiff is barred from bringing Title VII, ADA, and ADEA claims because he failed to exhaust his administrative remedies by filing a charge with the EEOC within 300 days of the last alleged discriminatory act. "If the statutory time period elapses between the allegedly discriminatory incident and the filing of the EEOC charge, the litigant is forever barred from . . . relief." *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 619 (E.D. Va. 2011). The Fourth Circuit has upheld strict adherence to time limits on discrimination claims because to do otherwise would violate Congress's clear intent. *See Hamilton v. 1st Source Bank*, 928 F.2d 86, 87–88 (4th Cir. 1990). Here, the last alleged discriminatory act occurred on March 8, 2024—when Plaintiff

was terminated.[4]  Accordingly, applying the 300-day rule, Plaintiff had to file an EEOC charge no later than January 2, 2025.  Because Plaintiff did not file his EEOC Charge until February 5, 2025, Dkt. 20-1 at 11, the EEOC Charge was untimely, Plaintiff failed to administratively exhaust his claims, and the instant suit is barred.

None of Plaintiff's arguments in his Opposition suggest a different result.  In his Opposition, Plaintiff spends  considerable time attacking the procedural posture of Defendant's Motion and asserting that Defendant misstates the applicable legal standards.[5]  Plaintiff further asserts that his Amended Complaint states claims plausibly supported by sufficient non-conclusory facts.[6]  Plaintiff's only legal argument is found in an additional filing after his Opposition, in which he claims his filings are timely under the "continuing violations doctrine," and that his claims are entitled to equitable tolling of the statute of limitations.  *See* Dkt. 27.

---

[4] Plaintiff's original Complaint alleged he was terminated on March 8, 2024.  Dkt. 1 ¶ 8.  However, his Amended Complaint only asserts he was terminated in "March, 2024."  Dkt. 16 ¶ 6.  Regardless, Plaintiff's EEOC Charge would be outside the statutory period because there is no day in March 2024, that is within 300 days of February 5, 2025—when Plaintiff filed his EEOC Charge.  Dkt. 20-1 at 11.

[5] Plaintiff appears to be mistaken about the nature of the Court's denial of the first motion to dismiss as moot.  *See* Dkt. 25.  The Court denied the original motion to dismiss because, once the Court accepted the filing of the Amended Complaint, the first Complaint was no longer operative.  *See Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451 (4th Cir. 2017).  In other words, the Amended Complaint replaced the first Complaint in the case.  Thus, the original motion to dismiss was no longer properly before the Court.  *See id.*  The Court's denial of the first motion to dismiss did not address the merits of the Complaint, nor did it preclude Defendants from raising substantially similar arguments in the instant Motion.

[6] Plaintiff's Opposition and subsequent filings do not mention his ADEA or Section 1981 claims.  Rather, the filings refer to his Title VII and ADA claims, and mention "wrongful termination in violation of public policy."  Dkt. 25 at 2.  To the extent that Plaintiff is trying to bring a different claim than one that exists in his Amended Complaint, "it is axiomatic that a Plaintiff may not amend their complaint through an opposition brief." *Oku v. Trumbull Ins. Co.*, 2026 WL 801263 (E.D. Va. Mar. 23, 2026).

6

In the hostile work environment context, courts follow the "continuing violation doctrine" established by the Supreme Court of the United States in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). There, the Supreme Court determined that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purpose of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105. Applying *Morgan*, district judges in the Eastern District of Virginia have held that:

> If acts outside the statutory window contribute to a hostile work environment, the Court may consider all of those acts, so long as any act contributing to that same hostile work environment occurs within the statutory window. Such a timely-act "anchors" the previous acts that occurred more than 300 days before the charge, making them also timely under the continuing violation doctrine.

*Edwards*, 760 F. Supp. 2d at 620.

Here, Plaintiff has recognized the holding of *Morgan* but has improperly applied it to the facts in his case because *no act* was within the limitations period. *See* Dkt. 27 at 3, 5 ("Defendants assert untimeliness. However, [*Morgan*] recognized that 'continuing violations' . . . are not time-barred if one actionable incident falls within the limitations period. The facts show a string of hostile and discriminatory actions continuing until Plaintiff's termination, well within the timely bounds."). Plaintiff was terminated from his position on March 8, 2024. Dkt. 20-1. No further acts could contribute to a hostile work environment after this date because Plaintiff was no longer an employee. Pursuant to the 300-day period to file an action with EEOC, at least one violation contributing to a hostile work environment must have occurred on or after April 11, 2024. *See Morgan*, 536 U.S. at 105. Therefore, even considering the continuing violations doctrine as to his hostile work environment claims, Plaintiff still failed to file his charge within the statutory period

7

because March 8, 2024 (the date of the last act, his termination) is not on or after April 11, 2024. *See id.*

Plaintiff additionally claims that he is entitled to tolling of the Title VII, ADA, and ADEA statute of limitations pursuant to *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982). Plaintiff is correct that *Zipes* held that courts can waive the statute of limitations and failure to exhaust requirements for Title VII claims when equity so requires. *Id.* at 393; *see also Honda v. Clark*, 386 U.S. 484, 501 (1967) (holding tolling must be "consistent with the overall congressional purpose"). Typically, tolling is awarded when the plaintiff made a good faith attempt to file within the statutory period or where the opposing party's misconduct induced their failure to file in time. *See Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990) ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."). Courts have not been inclined to toll the statute of limitations where a plaintiff did not exercise due diligence. *See id.*

Here, upon review, Plaintiff is not entitled to equitable tolling because there is no suggestion that he exercised due diligence in attempting to file his EEOC Charge within the statutory deadline or that Defendant otherwise precluded him from doing so. Indeed, Plaintiff has not alleged any facts in his Amended Complaint that suggest he should be entitled to equitable relief. *See* Dkt. 16. In his Opposition, Plaintiff argues that he should be awarded equitable tolling because "the complaint states instances of managerial interference, contradictory instructions, and misleading guidance." Dkt. 27 at 5. However, Plaintiff's Amended Complaint only references events that were done in the context of Plaintiff's employment, not his filing of the EEOC Charge. *See* Dkt. 16. Plaintiff has in no way suggested that Defendants' management misled or otherwise

8

tried to prevent Plaintiff from filing his EEOC Charge on time. *See id.* Furthermore, the last alleged discriminatory act was Plaintiff's termination. Given Plaintiff and Defendants' apparent lack of contact and relationship post-termination, it is not a reasonable inference that Defendants interfered with Plaintiff's ability to file during the statutory period. And this Court need not *sua sponte* envision a scenario where interference was possible when it was neither alleged in the Amended Complaint nor supported by anything in the record.

Accordingly, Plaintiff has failed to exhaust his administrative remedies for his Title VII, ADA, and ADEA claims. Plaintiff also failed to file his EEOC Charge within the 300-day window after the last alleged discriminatory act and Plaintiff is not entitled to equitable tolling. Therefore, Plaintiff's Title VII, ADA, and ADEA claims are procedurally barred and the Motion will be granted in this regard.

## B. Failure to State a Claim

Even if this Court were to grant Plaintiff equitable tolling relief, the Court would still dismiss the Amended Complaint based on Plaintiff's failure to state a claim. The Court addresses each count in turn.

### i. Count I – Discrimination and Hostile Work Environment
### (Title VII, 1981, ADA, ADEA)

To state a claim for Title VII discrimination where, as here, a plaintiff does not allege any direct evidence of discrimination, the plaintiff must demonstrate "(1) he is a member of a protected class, (2) he suffered from an adverse employment action, (3) he was performing in accordance with his employer's legitimate expectations, and (4) he was treated differently than similarly-situated employees outside of the protected class."[7] *Coleman v. Maryland Ct. of Appeals*, 626

---

[7] To survive a motion to dismiss under Title VII, plaintiffs do not need to plead a *prima facie* case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). However, plaintiffs must

F.3d 187, 190 (4th Cir. 2010). Title VII prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Section 1981 prohibits discrimination based on race, color, or national origin, and has the same elements as a Title VII race claim. *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004). Accordingly, this Court will analyze Plaintiff's Title VII race discrimination and § 1981 claim together.

Defendant does not dispute that Plaintiff is African American and, therefore, a member of a protected class. *See* Dkt. 16 ¶ 5. And Plaintiff undoubtedly suffered from an adverse employment action when he was fired.[8] Plaintiff pleads that any shortcomings in his performance or performance metrics are the fault of his management and their failure to train him or otherwise support him. Dkt. 16 ¶¶ 9, 10, 11, 13, 15, 20, 23. Assuming Plaintiff's Amendment Complaint is intended to claim that, because of his employer's failures, Plaintiff was performing in accordance with his employers' *legitimate* expectations and assuming that such a claim would satisfy this element, this Court will move to the fourth element. To satisfy the final element, the Amended Complaint must plausibly plead that Plaintiff was treated differently than similarly situated employees outside of the protected class. *Coleman*, 626 F.3d at 190.

---

"allege facts to satisfy the elements of a cause of action created by that statute." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Ultimately, Plaintiff must allege sufficient facts to establish a reasonable inference of discrimination. *See Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020) (discussing whether allegations are sufficient to support a reasonable inference of discrimination sufficient to support a motion to dismiss).

[8] To the extent that Plaintiff believes his requirement to report his schedule, lack of training, or poor performance metrics were also adverse employment actions, Plaintiff has failed to allege sufficient facts concerning the specifics of such actions, when they occurred, or who the decisionmaker was. However, had Plaintiff pleaded such, his claims would still fail for the reasons below.

Plaintiff's Title VII and Section 1981 claim for racial discrimination fails because he has not alleged facts that support that he was treated differently than similarly situated employees outside his protected class or otherwise support an inference of race discrimination. To sufficiently allege similarly situated comparators, a plaintiff must allege "that the proposed comparators are not just similar in some respects, but 'similarly-situated in all respects.'" *Spencer v. Va. State Univ.*, 919 F.3d 199, 207–08 (4th Cir. 2019) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Here, Plaintiff does not mention the race of any of his coworkers other than to make the threadbare assertion that he received disparate treatment from non-minority workers. *See* Dkt. 16. Moreover, Plaintiff has alleged no facts to support that his coworkers were similarly situated to him. *Id.* Plaintiff fails to identify his coworkers' positions, job descriptions, or circumstances of employment. *See Spencer*, 919 F.3d at 207 (holding that to determine if jobs are similar courts should consider "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications. . . ."). Plaintiff similarly fails to detail his own role outside of identifying his job title as "Provider Contract Manager." *See* Dkt. 16. Ultimately, Plaintiff's pleadings do not give rise to a reasonable inference of discrimination. Therefore, Plaintiff fails to state a claim for Title VII or Section 1981 discrimination based on race.

Similarly, Plaintiff's Title VII claim for sex discrimination fails because Plaintiff again fails to allege a similarly situated comparator or other facts that would support a reasonable inference of discrimination. *See Coleman*, 626 F.3d at 190. Plaintiff, as a man, is a member of a protected class. *See Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 305 (2025) (holding that a member of a majority class can still be part of a protected class for purposes of Title VII protection with no additional evidentiary requirement). Plaintiff alleges that all of his coworkers

11

are women, making them outside of his protected class. *See* Dkt. 16.  However, Plaintiff provides no support for the conclusion that his coworkers are similarly situated because, as noted above, Plaintiff did not include information about his or his coworkers' positions. *See Spencer*, 919 F.3d at 207.  Therefore, Plaintiff has not pleaded facts that create an inference that he was discriminated against based on sex and the record shows no other facts connecting Plaintiff's sex to the discrimination he alleges that he faced.

Plaintiff's claim that he was discriminated against based on his age in violation of the ADEA fails because he has not alleged facts that create a nexus between his age and his employer's discrimination.  The elements of a *prima face* claim under the ADEA are that the plaintiff (1) be over the age of 40 and (2) experienced discrimination from an employer (3) because of their age. *See Tickles v. Johnson*, 805 F. App'x 204, 207 (4th Cir. 2020).  Here, Plaintiff pleaded that he was over the age of 40, was subject to disparate treatment, and was terminated from his position. However, Plaintiff does not provide facts that give rise to an inference that he was treated this way *because* of his age. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 (2009) (holding that Plaintiff must show that his age was the "but-for" cause of his employer's adverse actions). Plaintiff has not suggested that any decisionmaker was aware of his age or that any comments were made about his age.  Plaintiff similarly failed to include the ages of his coworkers who he claims to have been treated differently than. *See Tickles*, 805 F. App'x at 207 (holding a complaint had not pleaded facts that give rise to an inference that discrimination was based on age when it didn't include "[a]ppellant's own qualifications, the qualifications and rule violations of his proposed comparators, or even the proposed comparators' proximity in age to his own"). Therefore, Plaintiff has not pleaded facts that give rise to a plausible inference that Plaintiff was discriminated against because of his age.

The Court next turns to Plaintiff's ADA discrimination claim. As a preliminary matter, the Court notes that Plaintiff has separately pled allegations related to his discharge and Defendants' alleged failure to accommodate in Count III, which the Court analyzes *infra*. To the extent Plaintiff asserts a general discrimination claim beyond these circumstances, the claim fails because Plaintiff fails to allege that an adverse employment action occurred under circumstances that raise a reasonable inference of unlawful discrimination. *See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995). Unlike age or sex discrimination claims, ADA claims cannot rely on the treatment of similarly situated employees outside of their protected class to show discrimination. *See id.* at 59. Plaintiffs must, therefore, show "some other affirmative evidence that disability was a determining factor in the employer's decision." *Id.* Plaintiff has not pleaded anything about his disability other than that "[he] notified Defendants of his disability in January 2024 and requested reasonable accommodation for a qualifying medical condition." Dkt. 16 ¶ 28. Thus, any adverse actions taken before January 2024 could not show that Plaintiff's disability was a "determining factor in the employer's decision." *Ennis*, 53 F.3d at 58. The only date after January 2024 in Plaintiff's Amended Complaint that is connected to Defendant's conduct is his termination. *See* Dkt. 26. Because Plaintiff has pleaded his termination as a different count, it will be analyzed elsewhere. *Id.*[9] Therefore, within the time of his employment, Plaintiff has not pleaded facts that give rise to an inference that Plaintiff's disability was a determining factor in the employer's decisions.

---

[9] Plaintiff attached an exhibit to his Amended Complaint showing that, on January 2, 2024, he was given access to software which he informed his employer he did not have access to on December 28, 2023. Dkt. 26 ¶ 9. This Court does not find receiving access to software three business days after it was requested to be an adverse action, so it does not support an inference of discrimination.

Plaintiff's claim that the aforementioned discrete acts of discrimination created a hostile work environment must also fail because he has not established that they were so severe or pervasive as to alter the conditions of employment. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (en banc). To establish a *prima facie* case of a hostile work environment a Plaintiff must show: (1) unwelcome conduct, (2) that is based on the Plaintiff's position in a protected class, (3) the conduct must be so severe and pervasive to alter the Plaintiff's conditions of employment, and (4) there is some basis for imputing liability on the employer. *See Boyer-Liberto*, 786 F.3d at 271 (defining a hostile work environment for a Title VII and § 1981 claim); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001) (defining a hostile work environment for an ADA claim); *Martin v. Scott & Stringfellow, Inc.*, 643 F. Supp. 2d 770 (E.D. Va.), *aff'd*, 352 F. App'x 778 (4th Cir. 2009) (defining a hostile work environment for an ADEA claim) (citing *Baqir v. Principi*, 434 F.3d 733, 745–46 (4th Cir. 2006)). Conduct may be "severe or pervasive" when it is subjectively hostile from the plaintiff's point of view and objectively hostile from the perspective of a reasonable person. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). When deciding if conduct is "sufficiently hostile" courts will look at "[the] frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998).

Here, Plaintiff has pleaded that he was micromanaged, held to higher standards than employees outside of his protected class, and blamed for performance deficiencies that were more fairly attributed to his supervisors. *See* Dkt. 16. Although these indignities are no doubt unpleasant, they are not similar to the "threatening or humiliating" conduct that courts have recognized as sufficiently hostile to create a hostile work environment. *See Faragher*, 524 U.S.

14

775, 787–88. These comments are more like "the ordinary tribulations of the workplace" which have been found not to meet this standard. *Id.* at 788. Moreover, even if these indignities were found to be so severe or pervasive to create a hostile work environment, Plaintiff has not shown a nexus between his protected class and Defendants' unwelcome conduct. *See Boyer-Liberto*, 786 F.3d at 271. Thus, Plaintiff was not subject to a hostile work environment.

### ii. Count II – Retaliation (Title VII, ADA)

Plaintiff also claims he was retaliated against for objecting to discrimination and requesting accommodations for his disability. Dkt. 26 ¶ 27. To show a *prima facie* case of retaliation, a plaintiff must allege: (1) that he engaged in a protected activity; (2) that his employer took adverse employment action against him; and (3) that there was a causal link between the two events. *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 4006 (4th Cir. 2005) (describing the standard for a Title VII retaliation claim); *see also Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) (describing the same standard for ADA retaliation claims). To satisfy the third prong, a Plaintiff must demonstrate that the decisionmaker who took the adverse employment action had knowledge of the Plaintiff's participation in a protected activity. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 125; *Smith v. CSRA*, 12 F.4th 396 (4th Cir. 2021) (quoting *Roberts*).

Plaintiff has not pleaded facts giving rise to an inference of retaliation because Plaintiff has not provided any facts regarding his alleged protected activities nor identified the decisionmaker who instituted the adverse employment action against him. *See* Dkt. 16. Plaintiff has pleaded that he engaged in protected activity by objecting to unlawful activity (employer discrimination) and requesting accommodation (for his disability). Dkt. 16 ¶ 27. Such conclusory allegations without more, are insufficient to plausibly assert that he engaged in protected activities. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere

15

conclusory statements, do not suffice."), Assuming *arguendo* that this Court were to accept that Plaintiff engaged in protected behavior and was subject to an adverse employment action, Plaintiff still cannot fulfill the knowledge requirement from *Roberts* because Plaintiff did not identify who took adverse employment action against him nor that they were aware of his protected conduct. *See Roberts*, 998 F.3d at 125. Therefore, Plaintiff has not pleaded facts sufficient to support an inference of retaliation.

### iii. Count III – Discriminatory Discharge and Failure to Accommodate (ADA)

The elements of an ADA discriminatory discharge case are: "(1) he was in the protected class; (2) he was discharged; (3) at the time of the discharge, he was performing her job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Ennis*, 53 F.3d at 58. In the context of ADA claims, the protected class is composed of "qualified individuals with a disability," and a disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." *Id.* at 59.

Plaintiff's ADA discriminatory discharge claim fails because he has not pleaded facts with sufficient specificity to surpass the "threadbare recita[tion] of elements" standard. *Iqbal*, 556 U.S. at 678. The only fact in the Amended Complaint about plaintiff's disability is that "Plaintiff notified Defendants of his disability in January 2024." Dkt. 16 ¶ 28. Plaintiff's statement is exactly the kind of threadbare recitation of the elements that fail under the *Iqbal* standard . *See Iqbal*, 556 U.S. at 678. Indeed, this Court cannot even assess whether Plaintiff's alleged disability qualifies as such under the ADA because Plaintiff provides no facts regarding his alleged disability other than attaching that label. *See Ennis*, 53 F.3d at 58. Moreover, Plaintiff has not identified who he notified of his disability beyond "the defendants," which is not enough to warrant an inference of

16

discrimination. Dkt. 16 ¶ 28. Thus, there are not sufficient facts to give rise to an inference that Plaintiff was in the protected class or that his discharge occurred under circumstances giving rise to an inference of discrimination.

Plaintiff's failure to accommodate claim is also insufficient because it lacks any facts supporting his claim. *Iqbal*, 556 U.S. at 678. The elements of a failure to accommodate claim are: (1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337 (4th Cir. 2013). Regarding his request for accommodations Plaintiff wrote:

> Plaintiff notified Defendants of his disability in January 2024 and requested reasonable accommodation for a qualifying medical condition. Defendants failed to engage in the interactive process, misattributing performance deficiencies to medical absence and failed system access, and discharged Plaintiff in pretext for protected conduct.

Dkt. 26 ¶ 28. Such vague and conclusory allegations are plainly insufficient and again are exactly the kind of threadbare recitals barred under *Iqbal*. 556 U.S. at 678; Dkt. 26 ¶ 28. Accordingly, Plaintiff has not pleaded sufficient facts for a failure to accommodate claim.

### iv. Count IV – Disparate Treatment in Terms and Conditions (Title VII, 1981, ADA)

Plaintiff has pleaded disparate treatment as a separate count; however, disparate treatment is a theory upon which one can show discrimination, not a separate claim. Dkt. 26; *Wright v. Nat'l Archives & Recs. Serv.*, 609 F.2d 702, 711 (4th Cir. 1979). For that reason, the analysis applicable Count I also applies here, and Plaintiff's claims still fail for lacking a nexus between his protected status and the adverse employment actions.

\* \* \*

17

Despite basing its decision on Plaintiff's Amended Complaint (the operative complaint), this Court notes that Plaintiff's original Complaint included what his disability was, what accommodations he sought, whom he informed of his disability and requested accommodations from, that he requested accommodations within eight days of his discharge, and who made the decision to fire him.  Dkt. 1.  Although these facts would all have bolstered his Amended Complaint, Plaintiff did not file his EEOC Charge in time and does not qualify for equitable tolling. Therefore, Plaintiff's Title VII, ADA, and ADEA claims are dismissed with prejudice because amending would be futile because they are procedurally barred.

## IV. CONCLUSION

In sum, Plaintiff's Title VII, ADA, and ADEA claims are procedurally barred for failure to exhaust their administrative remedies because Plaintiff failed to file his EEOC Charge within the 300-day window after the last alleged discriminatory act.  Moreover, Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.  Accordingly, Plaintiff's Amended Complaint will be dismissed.

\* \* \*

Accordingly, it is hereby ORDERED that Defendants' Motion to Dismiss (Dkt. 19) is GRANTED; and it is

18

FURTHER ORDERED that the Amended Complaint (Dkt. 16) is DISMISSED with prejudice. Plaintiff's Title VII, ADA, and ADEA claims are time-barred thus rendering amendment futile in that regard. Further, it appears that permitting further amendment of Plaintiff's Section 1981 claim would be futile, where Plaintiff has had an opportunity to amend, where the Amended Complaint included fewer facts than the original complaint, and where there is no suggestion that there are additional facts that Plaintiff could allege to render his claim plausible.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order that Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

IT IS SO ORDERED.

Alexandria, Virginia
July 22, 2026

/s/

Rossie D. Alston, Jr.
United States District Judge